UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| TRISTANO KORLOU,<br><br>    Plaintiff,<br><br>v.<br><br>BRUCKER GROUP, LLC d/b/a JBRUCKER ADVISORS,<br><br>    Defendant. | CIVIL ACTION<br><br>COMPLAINT 9:23-cv-81080<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** TRISTANO KORLOU ("Plaintiff"), by and through the undersigned counsel, complaining as to the conduct of THE BRUCKER GROUP, LLC, doing business as, JBRUCKER & ASSOCIATES ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Credit Repair Organizations Act ("CROA") pursuant to 15 U.S.C. § 1679 *et seq*., and the New York Credit Services Business statute, pursuant to N.Y. Gen Bus. 28-BB §458 *et seq*.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

1

4. Venue is proper in Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is domiciled in West Palm Beach, Florida and Defendant regularly does business and is licensed in the state of Florida.

**PARTIES**

5. Plaintiff is a consumer over 18-years-of-age residing in Spencerport, New York.

6. Defendant is a credit repair organization that claims to "repair the financial situation" of consumers "trying to set near and long term financial and credit goals" through its credit repair services.[1] Defendant is a limited liability company that operates nationwide, including the State of Florida and New York, with its principal place of business located at 600 S Dixie Highway, Unit 221, West Palm Beach, Florida 33401.

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

8. In or around January 2023, Plaintiff desired to cosign on a mortgage loan for his daughter, however, Plaintiff began experiencing financial hardship that resulted in him falling behind on a variety of consumer accounts.

9. As a result, Plaintiff's creditors began reporting late payments to his credit reports resulting in decreased ratings.

10. Unsatisfied with the current standing of his consumer credit reports, Plaintiff began researching companies to help him improve his credit rating so he may be approved to cosign on a mortgage loan for his daughter.

---

[1] http://www.jbruckeradvisors.com/services/ (Last visited July 13, 2023).

11. In or around February 2023, Plaintiff happened upon Defendant through its representations that it could help consumers improve their creditworthiness. Defendant promised Plaintiff that it would be able to remove negative marks from Plaintiff's consumer credit reports and increase his overall credit score.

12. On February 8, 2023, after discussing specific plans to remove negative accounts and improve Plaintiff's credit scores, Plaintiff entered into a contract with Defendant for the provision of credit repair services.

13. In accordance with the terms of the agreement, Plaintiff paid Defendant an upfront down payment of $650 for Defendant to begin its credit repair services. Defendant further promised Plaintiff that it would improve his overall credit scores within 60 days.

14. At the time, Defendant informed Plaintiff that, in accordance with Florida law, it was permitted to charge up-front payment from Plaintiff before it performs any promised services.

15. Additionally, the agreement promises a refund to Defendant in the event it fails to complete its services.

16. Specifically, the agreement states:

> "If [Defendant] removes ANY agreed upon accounts for said client but not ALL and there are no ongoing investigations at day 60 and client chooses to exercise his contractual refund, then there will be a 35% reimbursement of down payment if nothing is removed from said credit report within 60 days, and assuming there are no ongoing investigations with any of the 3 bureaus still active, then client will receive a 100% reimbursement of his initial down monies".

17. In June 2023, Plaintiff was growing more disappointed in Defendant's failure to improve his credit rating and remove items from his credit reports, so he expressed his concerns.

18. Defendant was unable to alleviate Plaintiff's concerns and failed to improve Plaintiff's credit rating despite receiving upfront payment from Plaintiff.

19. Specifically, Defendant gave Plaintiff the run around by purporting to be responsible for certain accounts being removed from Plaintiff's credit reports.

20. Throughout their dealings, Defendant deceptively and misleadingly strung Plaintiff along, telling him what he wanted to hear in order to retain his down payment, only to turn around and fail to deliver on the promises and representations that induced Plaintiff's participation in Defendant's credit repair services.

21. Moreover, Defendant informed Plaintiff that it was sending credit disputes on his behalf as a means to more promptly address the issues on Plaintiff's credit reports, however, Defendant's conduct in this regard misleadingly represented the extent to which the credit reporting agencies are obligated to respond to credit disputes submitted by credit repair organizations.

22. Despite Defendant's promises that negative and misleading accounts would be removed from his credit reports, Plaintiff continues to have negative accounts reporting on his credit files.

23. In July 2023, dissatisfied with the sum of money paid for deficient credit repair services and false promises, Plaintiff cancelled his contract with Defendant and demanded reimbursement of his payment as stated in the contract. Defendant failed to refund Plaintiff any monies as it indicated that Florida law allows Defendant to retain Plaintiff's upfront down payment.

24. Since Plaintiff's enrollment in Defendant's credit repair service, Plaintiff continues to have negative accounts on his credit reports despite Defendant's promises that Plaintiff detrimentally relied on.

25. As a result of Defendant's failed promises, Plaintiff's creditworthiness was not improved to the ends of obtaining Plaintiff's desired mortgage loan as initially represented by Defendant.

26. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

27. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

28. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

29. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

   **a. Violations of CROA § 1679b(a)**

30. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or

results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

31. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant advised that it would actively remove the inaccurate accounts and inquiries from Plaintiff's credit report and increase Plaintiff's overall credit worthiness but failed to fulfill that promise.

32. Defendant further acted deceptively when it suggested to Plaintiff that his up-front payment was being used to remove identified accounts within Plaintiff's credit reports.

33. Moreover, Defendant acted deceptively by representing that it was permitted to charge Plaintiff payments up-front under the laws of the State of Florida. Defendant intentionally and deceptively made these false statements to induce Plaintiff into paying Defendant when it knew, or should have known, its false statements were in violation of the CROA.

34. Additionally, Defendant acted deceptively by promising to return all of Plaintiff's payment if it failed to remove any negative accounts from his credit reports, or 35% of his payment if only some were removed, in accordance with the agreement. Defendant failed to remove any negative accounts from Plaintiff's credit reports and yet, Defendant failed to refund any amount to Plaintiff as promised.

   **b. Violations of CROA § 1679b(b)**

35. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

36. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging payment for all services upfront, before such services is performed, is inherently in violation of the CROA.

   c. **Violation of CROA §1679c**

37. CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumers. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer, or any other written material provided to the consumer."

38. Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

39. As alleged above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff, TRISTANO KORLOU, respectfully requests that this Honorable Court enter judgment in his favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

   b. Awarding Plaintiff actual damages to be determined at hearing, as provided under 15 U.S.C. § 1679g(a)(1);

   c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d.    Awarding Plaintiff's costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

    e.    Awarding any other relief as the Honorable Court deems just and appropriate.

**COUNT II – VIOLATIONS OF THE NEW YORK CREDIT SERVICES BUSINESS STATUTE**

40. Plaintiff is a "consumer" as defined by N.Y. Gen Bus. 28-BB § 458-b(2).

41. Defendant is a "credit services business" as defined by N.Y. Gen Bus. 28-BB § 458-b(1).

    **a. Violation of N.Y. Gen. Bus. 28-BB § 458e**

42. Pursuant to N.Y. Gen. Bus. 28-BB § 458e, "Advance fees [are] prohibited. It is hereby declared to be an unfair and deceptive trade practice and unlawful for a credit services business to receive or collect from a consumer any fee in advance of the performance of those services specified in the contract"

43. Defendant violated N.Y. Gen. Bus. 28-BB § 458e through its charging and receiving of money for services agreed to perform in advance of any services being fully performed. Defendant's practice of charging payment for all services upfront, before such services is performed, is inherently in violation of the New York General Business Statute.

    **b. Violation of N.Y. Gen. Bus. 28-BB § 458h**

44. Pursuant to N.Y. Gen. Bus. 28-BB § 458h(1), it is declared to be an unfair and deceptive trade practice for a credit services company to misrepresent directly or indirectly in its advertising, promotional materials, sales presentation, or in any manner: the nature of the services to be performed; the time within which services will be performed; the ability to improve a consumer's credit report or credit rating; the amount or type of credit a consumer can

expect to receive as a result of the performance of the services offered; the qualifications, training or experience of its personnel.

45. Defendant violated N.Y. Gen. Bus. 28-BB § 458h(1) through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Despite Plaintiff having made sufficient funds for Defendant to begin removing identified accounts from his credit reports, Defendant failed to engage in any of the services it represented it would perform for Plaintiff, instead deceiving Plaintiff to retain his payment without providing any of the services it represented it would perform.

46. Defendant violated N.Y. Gen. Bus. 28-BB § 458h(1) when it suggested to Plaintiff that his up-front payment was being used to remove identified accounts within Plaintiff's credit reports.

47. Defendant violated N.Y. Gen. Bus. 28-BB § 458h(1) by representing that it was permitted to charge Plaintiff payments up-front under the laws of the State of Florida. Defendant intentionally and deceptively made these false statements to induce Plaintiff into paying Defendant when it knew, or should have known, its false statements were in violation of New York Law.

48. Defendant violated N.Y. Gen. Bus. 28-BB § 458h(1) by promising to return all of Plaintiff's payment if it failed to remove any negative accounts from his credit reports, or 35% of his payment if only some were removed, in accordance with the agreement. Defendant failed to remove any negative accounts from Plaintiff's credit reports and yet, Defendant failed to refund any amount to Plaintiff as promised.

49. As alleged above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff, TRISTANO KORLOU, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to N.Y. Gen Bus. 28-BB § 458;

c. Awarding Plaintiff punitive damages pursuant to N.Y. Gen Bus. 28-BB § 458;

d. Awarding Plaintiff's costs and reasonable attorney fees; and,

e. Awarding any other relief as this Court deems just and appropriate.

**Plaintiff demands a Trial by Jury**

Dated: July 25, 2023

Respectfully submitted,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue,
Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com